O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MOSSIMO HOLDINGS LLC, | ) | Case No. CV 14-05912 DDP (JEMx) |
| Plaintiff, | ) ) | **ORDER RE HARRY HARALAMBUS AND THE LAMBUS CORPORATION'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | ) ) | |
| HARRY HARALAMBUS, an individual; ONWARD PACIFIC LIMITED, a Hong Kong corporation; BEYOND BLUE, INC., a California corporation; THE LAMBUS CORPORATION; a California corporation, | ) ) ) ) ) ) ) ) | (MOTION DOCKET NUMBERS 13 AND 14) |
| Defendants. | ) ) | |

Before the Court are two motions to dismiss the Plaintiff's Complaint, filed separately by Defendants Haralambus and The Lambus Corporation ("TLC").  Having considered the parties' submissions and heard oral arguments, the Court adopts the following order.

**I.   BACKGROUND**

Mossimo, Inc. entered into a licensing agreement with Defendant Beyond Blue in 2001, granting Beyond Blue the right to sublicense the "Mossimo" trademark in the Philippines in exchange

for a percentage of the royalties resulting from any such sublicensing. (Id. at ¶ 2.)  Plaintiff alleges, and provides an exhibit to show, that the terms of the licensing agreement gave it the right to 70% of royalties as well as the right to quarterly sales reports, the right to conduct audits; sublicenses also required Plaintiff's prior written consent. (Id. at ¶ 19; Compl., Ex. 1.)  Mossimo, Inc. then transferred ownership of the mark to Plaintiff in 2006. (Compl. ¶¶ 1, 18-19.)  Plaintiff and Beyond Blue amended the license agreement in 2007.  Plaintiff alleges, and provides an exhibit to show, that the amendment left all terms of the original agreement intact unless expressly amended. (Id. at ¶ 22; Compl., Ex. 2)  Plaintiff alleges that the 2007 amendment required Defendant Beyond Blue to pay guaranteed minimum royalties totaling $1,000,000, less a $200,000 credit. (Id. at ¶ 23.)  The amendment also allowed Beyond Blue to assign its interest in the license agreement to Onward Pacific ("Onward"), provided Onward agreed to be bound by the terms of the contract. (Compl., Ex. 2, ¶ 7.)

     Plaintiff alleges that since 2007, Defendants Beyond Blue and Onward[1] have not provided quarterly reports, paid the guaranteed royalties, or paid the required percentage of actual royalties. (Id. at ¶ 27.)  Plaintiff also alleges that Defendants entered into an unauthorized sublicense agreement with nonparty Promark Industries ("Promark") and that they concealed their breaches of the agreement until after the end of the agreement. (Id. at 28,

----

[1]Plaintiff alleges that Beyond Blue transferred its rights to Defendant Onward Pacific immediately after the 2007 amendment was executed. (Compl. ¶ 25.)

1  30.)  To the extent that Plaintiff was aware of breaches of the

2  agreement, it alleges that it has made "repeated demands for

3  performance." (Id. at 29.)  Plaintiff now brings this action for

4  breach of contract, conversion, money had and received, and fraud,

5  demanding damages, accounting and injunctive relief.

6  **II.  LEGAL STANDARD**

7       In order to survive a motion to dismiss for failure to state a

8  claim, a complaint need only include "a short and plain statement

9  of the claim showing that the pleader is entitled to relief." Bell

10  Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v.

11  Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include

12  "sufficient factual matter, accepted as true, to state a claim to

13  relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S.

14  662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

15  570 (2007)).  When considering a Rule 12(b)(6) motion, a court must

16  "accept as true all allegations of material fact and must construe

17  those facts in the light most favorable to the plaintiff." Resnick

18  v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

19  **III. DISCUSSION**

20  **A.   Breach of Contract Claims**

21       Beyond Blue and Onward are corporate entities distinct from

22  Defendants Haralambus and TLC.  Plaintiff has not alleged that it

23  has a contractual arrangement with the latter Defendants, and so if

24  there is not good cause to "ignore the fiction of separateness and

25  approve a piercing of the corporate veil," Plaintiff's contractual

26  claims must fail against them. Towe Antique Ford Found. v. I.R.S.,

27  999 F.2d 1387, 1391 (9th Cir. 1993).  Thus, these claims hinge on

28

1  whether Plaintiff has properly alleged that Beyond Blue and Onward

2  are mere corporate "alter egos" for TLC and/or Haralambus.

3     Federal courts exercising diversity jurisdiction apply the law

4  of the forum state in determining whether a corporate is an "alter

5  ego" of its owners or officers.  Id.  California is the appropriate

6  forum state here, because the contract is governed by California

7  law.  (Compl., Ex. 1, § 15.5.1.)  In California, to show that a

8  court should pierce the corporate veil under an "alter ego" theory,

9  a party must demonstrate two things: first, there must be "unity of

10 interest and identity" between the corporation and the principals,

11 such that they are no longer separate persons; and second, the

12 piercing must be necessary to avoid "an inequitable result."

13 Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 300 (1985).

14    Although California law governs substantively, however, Rule 8

15 pleading standards still apply here: the Complaint must put

16 Defendants on notice as to Plaintiff's theory of the case.  Bell

17 Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  This requirement

18 is not strict: "The identification of the elements of alter-ego

19 liability plus two or three factors has been held sufficient to

20 defeat a 12(b)(6) motion to dismiss."  Pac. Mar. Freight, Inc. v.

21 Foster, No. 10 CV 0578 BTM BLM, 2010 WL 3339432, at *6 (S.D. Cal.

22 Aug. 24, 2010).  But here there is no express reference anywhere in

23 the Complaint to any theory of alter ego liability or to piercing

24 the corporate veil.  Nor is an alter ego theory so apparent from

25 the face of the Complaint that Defendants could reasonably be

26 expected to understand that Plaintiff is asserting it.

27    Plaintiff nonetheless argues that it has sufficiently pled the

28 alter ego theory, because it has alleged facts consistent with such

4

1   a theory.  (Opp'n to TLC's Mot. at 4.)  For example, in examining
2   the first prong, courts consider such factors as "commingling of
3   funds and other assets," "identical equitable ownership," "use of
4   the same offices and employees," and the degree to which the
5   corporation is a "mere shell or conduit" for the principal.  <u>Sonora</u>
6   <u>Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th 523, 538-39
7   (2000).  Plaintiff alleges that Haralambus, as an officer of
8   Onward, directed that Promark make royalty payments to TLC rather
9   than to Onward, in order to avoid having to report the income to
10  Plaintiff.  (Compl. ¶¶ 30-32.)  That allegation tends to show an
11  improper commingling of assets, as well as suggesting that TLC may
12  be a conduit for Haralambus's alleged wrongful acts.  Plaintiff
13  also alleges that Haralambus owns or controls Onward, Beyond Blue,
14  and TLC, as well as being President or some other officer of each
15  entity.  (<u>Id.</u> at ¶¶ 7-9 and <u>passim</u>.)  Plaintiff also alleges that
16  Beyond Blue and TLC, at least, share a business address.  (<u>Id.</u> at
17  8-9.)  All these are facts that could be used to show that some of
18  these entities may be alter egos of one another or of Haralambus.
19      Plaintiff's allegations that Haralambus took part in the
20  execution of unauthorized sublicense agreements and misdirected
21  payments to TLC might also support the second prong, which is
22  primarily an equitable inquiry: "The essence of the alter ego
23  doctrine is that justice be done . . . [L]iability is imposed to
24  reach an equitable result."  <u>Mesler</u>, 39 Cal. 3d at 301 (internal
25  quotation marks omitted).  "[W]hen the corporate form is used to
26  perpetrate a fraud . . . or accomplish some other wrongful or
27  inequitable purpose, the courts will ignore the corporate entity .
28

1 . . ."  <u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th

2 523, 538 (2000).

3      But even if the alleged funneling of payments to TLC tends to

4 show a collapse of the separate corporate entities *as to that*

5 *transaction*, and even if the Complaint explicitly alleged such a

6 collapse, that would not support claims against TLC and Haralambus

7 for other alleged breaches of the contract, such as failure to pay

8 guaranteed royalties or failure to make quarterly reports.  The

9 Court may not treat a breach of corporate form in one instance as a

10 complete annihilation of the corporate entity for all purposes:

11      [W]hen a court disregards the corporate entity, it does not

12      dissolve the corporation . . . .  It is not that a corporation

13      will be held liable for the acts of another corporation

14      because there is really only one corporation. Rather, it is

15      that *under certain circumstances a hole will be drilled in the*

16      *wall of limited liability* erected by the corporate form; *for*

17      *all purposes other than that for which the hole was drilled,*

18      *the wall still stands*.

19 <u>Mesler</u>, 39 Cal. 3d at 300-301 (emphases added).  Plaintiff alleges

20 numerous breaches of the license agreement.  But it does not

21 clearly explain in the Complaint (or even in the Opposition papers)

22 which breach of contract claims require the piercing of the

23 corporate form to reach TLC and/or Haralambus, and which do not.

24 More fundamentally, there is simply nothing in the Complaint or the

25 Opposition explaining how injustice would result if Plaintiff could

26 sue only Beyond Blue and Onward on its contract claims and could

27 not reach through the corporate veil to these Defendants.

28

1       The Complaint therefore does not adequately plead alter-ego

2   liability as to TLC and Haralambus.  It does not give Defendants

3   (or the Court) adequate notice that Plaintiff intends to assert the

4   doctrine.  Nor does it explain which alleged breaches of contract,

5   specifically, should be attributed to Haralambus and TLC rather

6   than Onward or Beyond Blue, or why an injustice would result if the

7   corporate veil were not pierced.  Although it might be possible to

8   tease out alter ego liability by implication as to certain claims,

9   the Court finds that the better course is to dismiss the breach of

10  contract claims altogether as to these two Defendants and give

11  Plaintiff leave to amend the Complaint to plead its alter ego

12  theory more explicitly and precisely.

13  **B.    Conversion and Money Had and Received Claims Against TLC**

14      There are, however, two claims against TLC that do not require

15  pleading of alter ego theory.  Plaintiff alleges that TLC received

16  monies that were rightfully Plaintiff's, (Compl. ¶¶ 32-33, 39), and

17  on that basis Plaintiff successfully pleads claims of conversation

18  and money had and received against TLC.

19      Defendants argue that Plaintiff's conversion claim should fail

20  because a contractual right of payment alone cannot support a

21  conversion claim.  <u>Farmers Ins. Exch. v. Zerin</u>, 53 Cal. App. 4th

22  445, 452 (1997) (holding that "a mere contractual right of payment,

23  without more, will not suffice" to state a claim for conversion).

24  But the conversion claim does not appear to be for monies due under

25  the license agreement, since the license agreement necessarily does

26  not cover unauthorized uses of the trademark.  Rather, the

27  conversion claim is better seen as an attempt to recover monies

28  wrongfully acquired by TLC from Promark precisely because they were

1  paid *outside* the scope of the license agreement.  Another way to

2  think of this is that Plaintiff seeks to recover money unlawfully

3  gained from the unauthorized use of its trademark and held by TLC

4  in, essentially, a constructive trust for Plaintiff.  (Compl. ¶ 49

5  ("Defendants . . . intentionally and unlawfully took possession of

6  assets generated from the illegal use of Plaintiff's trademark . .

7  . .").)  See PCO, Inc. v. Christensen, Miller, Fink, Jacobs,

8  Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 396 (2007)

9  ("California cases permitting an action for conversion of money

10  typically involve those who have misappropriated, commingled, or

11  misapplied specific funds held for the benefit of others.").  Such

12  a constructive trust is more akin to the equitable liens approved

13  by the Zerin court as an adequate basis for a conversion claim, 53

14  Cal. App. 4th at 452-53, than to a contractual right of payment.

15  The Court therefore finds that Plaintiff adequately states a claim

16  for conversion against TLC.

17     Defendants also argue that the money had and received claim

18  should fail because Plaintiff has not identified with specificity

19  who is alleged to have received payments.  This is not correct;

20  Plaintiff plainly identifies TLC as the recipient of the payments.

21     On the other hand, precisely because Plaintiff identifies TLC

22  as the recipient of the monies in question, it cannot maintain the

23  conversion and money had and received claims against Haralambus

24  unless it either alleges that he also received the money or that

25  TLC is his alter ego in this transaction.

26     The claims for conversion and money had and received survive

27  as to TLC only.

28  **C.   Fraud Claim Against Haralambus**

1   Plaintiff alleges that Haralambus committed fraud when he

2   represented to Plaintiff that Onward would be bound by and abide by

3   the terms of the license agreement–including representations that

4   Onward would not enter into a sublicensing agreement without

5   Plaintiff's prior written approval.  (Compl. ¶¶ 57-66.)

6   Haralambus, as an officer of Onward, can be held liable for fraud

7   committed on Onward's behalf, to the degree that he was personally

8   involved in the fraud.  United States Liab. Ins. Co. v.

9   Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970) ("Directors or

10  officers of a corporation do not incur personal liability for torts

11  of the corporation merely by reason of their official position,

12  unless they participate in the wrong or authorize or direct that it

13  be done. They may be liable, under the rules of tort and agency,

14  for tortious acts committed on behalf of the corporation.") Thus,

15  the fraud claim against Haralambus, inasmuch as it is based on

16  representations he made to Plaintiff while he personally negotiated

17  on behalf of Onward, is not dependent on any alter ego theory.

18      Haralambus makes two arguments as to why the fraud claim is

19  not valid.  First, he argues that the amendment to the licensing

20  agreement contains a mutual release provision which protects him,

21  as an officer, from "any and all manner of actions, causes of

22  action, obligations, costs, damages, arising from the beginning of

23  time to present . . . arising out of the License Agreement or this

24  Amendment Agreement."  (Compl., Ex. 2, ¶ 8.)  But the allegation of

25  fraud does not "arise out of" the license agreement; it is not a

26  contractual claim.  In alleging fraud against Haralambus, Plaintiff

27  is alleging a separate tort, albeit in a context where the line

28  between tort and contract law is blurred.  Lazar v. Superior Court,

12 Cal. 4th 631, 645 (1996).   For policy reasons alone, it would be
inadvisable to allow parties to contract away their rights to
assert fraud.   "[I]t is a truism that contract remedies alone do
not address the full range of policy objectives underlying the
action for fraudulent inducement of contract. In pursuing a valid
fraud action, a plaintiff advances the public interest in punishing
intentional misrepresentations and in deterring such
misrepresentations in the future."   <u>Id.</u> at 646.   But more than
that, it would be illogical.   Fraud in the inducement of a contract
necessarily vitiates consent, including as to the release
provision–itself a bargained-for element of the agreement.   The
release provision does not bar the fraud claim.

Haralambus also argues that the fraud claim is barred by
California's three-year statute of limitations.   Cal. Code Civ. P.
§ 338(d).   However, "[t]he cause of action in that case is not
deemed to have accrued until the discovery, by the aggrieved party,
of the facts constituting the fraud or mistake."   <u>Id.</u>   Plaintiff
alleges that it did not discover and could not discover that
Haralambus had made false representations on Onward's behalf until
well after the signing of the contract.   (Compl. ¶¶ 62-63.)
Plaintiff alleges it did not know, and could not have known, of the
full scope of Onward's breach of contract until sometime after
December 31, 2012.   (Compl. ¶ 28.)   Likewise, Plaintiff could not
have known of the falsity of Haralambus's alleged representations
until the same date.   The claim is not barred by the statute of
limitations.

However, Plaintiff has not alleged that TLC made any false
representations to Plaintiff, and it seems clear from the Complaint

10

1   that Haralambus was representing Onward, not TLC, when he committed

2   any alleged fraud.  Absent a clear pleading that, with regard to

3   this transaction, these entities are all one and the same under an

4   alter ego theory, the fraud claim must be dismissed as to TLC.

5   **IV.   CONCLUSION**

6        For the above reasons, the Court DISMISSES the breach of

7   contract claims as to Defendants Harry Haralambus and The Lambus

8   Corporation, the conversion and money had and received claims as to

9   Defendant Haralambus, and the fraud claim as to Defendant The

10  Lambus Corporation.  However, Plaintiff is GRANTED LEAVE TO AMEND.

11  Any amended complaint shall be filed with the Court not later than

12  14 days after the effective date of this order.

13

14  IT IS SO ORDERED.

15

16  Dated: November 17, 2014

17                                 DEAN D.  PREGERSON
                                   United States District Judge
18

19

20

21

22

23

24

25

26

27

28