O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOSSIMO HOLDINGS LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>HARRY HARALAMBUS, an individual; ONWARD PACIFIC LIMITED, a Hong Kong corporation; BEYOND BLUE, INC., a California corporation; THE LAMBUS CORPORATION; a California corporation,<br><br>　　　　　Defendants. | Case No. CV 14-05912 DDP (JEMx)<br><br>**ORDER RE HARRY HARALAMBUS AND THE LAMBUS CORPORATION'S MOTIONS TO DISMISS PLAINTIFF'S FIRST-AMENDED COMPLAINT**<br><br>[Dkt. Nos. 38, 40.] |

　　　Before the Court are motions to dismiss the Plaintiff's First-Amended Complaint, filed separately by Defendants Haralambus and The Lambus Corporation ("TLC"). Having considered the parties' submissions and heard oral arguments, the Court adopts the following order.

**I.　BACKGROUND**

　　　Mossimo, Inc. entered into a licensing agreement with Defendant Beyond Blue in 2001, granting Beyond Blue the right to

sublicense the "Mossimo" trademark in the Philippines in exchange for a percentage of the royalties resulting from any such sublicensing. (FAC ¶ 3.) Plaintiff alleges, and provides an exhibit to show, that the terms of the licensing agreement gave it the right to 70% of royalties as well as the right to quarterly sales reports, the right to conduct audits; sublicenses also required Plaintiff's prior written consent. (Id. at ¶ 21; FAC, Ex. 1.) Mossimo, Inc. then transferred ownership of the mark to Plaintiff in 2006. (Id. at ¶ 20.) Plaintiff and Beyond Blue amended the license agreement in 2007. (Id. at ¶ 22.) Plaintiff alleges, and provides an exhibit to show, that the amendment left all terms of the original agreement intact unless expressly amended. (Id. at ¶ 22; FAC, Ex. 2.) Plaintiff alleges that the 2007 amendment required Defendant Beyond Blue to pay guaranteed minimum royalties totaling $1,000,000 less a $200,000 credit. (Id. at ¶ 25.) The amendment also allowed Beyond Blue to assign its interest in the license agreement to Onward Pacific ("Onward"), provided Onward agreed to be bound by the terms of the contract. (FAC, Ex. 2, ¶ 7.)

Plaintiff alleges that since 2007, Defendants Beyond Blue and Onward have not provided quarterly reports, paid the guaranteed royalties, or paid the required percentage of actual royalties. (Id. at ¶ 30.) Plaintiff also alleges that Defendants entered into an unauthorized sublicense agreement with nonparty Promark Industries ("Promark") and that they concealed their breaches of the agreement until after the end of the agreement. (Id. at ¶ 32.)

Further, Plaintiff alleges Defendant Haralambus formed TLC in 2008 for the purpose of receiving royalties from Promark in an

2

effort to conceal and avoid having to account for those royalties to Plaintiff.  (Id. at ¶¶ 6, 35-36.)  Plaintiff alleges it sent a letter to Haralambus in 2011 informing him that Onward was in default under the Amended License Agreement for failure to pay the guaranteed minimum royalties. Plaintiff alleges that in 2013, Haralambus caused $100,000 to be transferred from TLC's account to pay Onward's default.  (Id. at ¶ 45.)  Plaintiff alleges this method of payment proves that Onward is unable to pay its obligations under the Amended License Agreement and that its income has been commingled with Lambus Corp.  (Id. at ¶¶ 45-46.)

To the extent that Plaintiff was aware of breaches of the agreement, it alleges that it has made "repeated demands for performance." (Id. at ¶ 31.)  Plaintiff now brings this action for breach of contract, conversion, money had received, and fraud, demanding damages, accounting and injunctive relief.

**II. LEGAL STANDARD**

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plaint statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. V. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000).

**III. DISCUSSION**

**A.    Breach of Contract Claims**

**1.    Alter Ego Theory**

The Court previously dismissed Plaintiff's breach of contract claim, apparently rooted in an "alter ego" theory of liability that would allow piercing of the corporate veil, because although Plaintiff had alleged some facts establishing the basic elements of alter ego theory,[1] it had neither explicitly pleaded the theory nor explained which breaches of contract, specifically, could be fairly attributed to Defendants TLC and Haralambus. (Dkt. No. 34.) In its FAC, Plaintiff realleges the breach of contract claims, but with additional factual allegations and a more direct allegation of "alter ego" liability. (FAC, ¶¶ 35-55.) However, Plaintiff still does not ascribe particular breaches to TLC and Haralambus; rather, Plaintiff asserts that Haralambus, TLC, and Onward are "each . . . alter egos of each other" and holds them all equally liable for each breach. (Id. at 52-54.)

Defendants argue that because its FAC still does not specify which breaches justify piercing the corporate veil, Plaintiff has not corrected the deficiency the Court identified in its previous order. (E.g., Reply of Haralambus at 4-5.) Plaintiff counters that under the particular species of alter ego theory it alleges, a theory called "single enterprise" theory, it is "not required to

---

[1] The basic elements are "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." Las Palmas Associates v. Las Palmas Ctr. Associates, 235 Cal. App. 3d 1220, 1249 (1991).

4

allege alter ego on a breach-by-breach basis." (Opp'n to TLC's Mot. Dismiss at 6:24-25.)

The Court begins with the general point that alter ego theory, in all its iterations, is an equitable tool, to be used to avoid injustice. Las Palmas Associates v. Las Palmas Ctr. Associates, 235 Cal. App. 3d 1220, 1248 (1991). It is a flexible determination varying with the circumstances of the case. Id. Under ordinary alter ego liability theory, the corporate veil is pierced only for particular purposes.

> It is not that a corporation will be held liable for the acts of another corporation because there is really only one corporation. Rather, it is that under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands.

Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 301 (1985). Therefore, under the typical alter ego theory, the complaint should ordinarily state with some specificity what claim or claims justify "drilling a hole" in the "wall" of limited liability, in order to limit the damage to the corporate form. This was the idea behind the Court's previous dismissal (along with a finding that Plaintiff's Complaint did not clearly state the alter ego theory).

But under the "single enterprise" version of alter ego liability, it *is* the case that "there is really only one corporation." Id. The leading case on the subject, Las Palmas Associates v. Las Palmas Ctr. Associates, states that "[i]n effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, *there*

5

*is but one enterprise;* and that this enterprise has been so handled that *it should respond, as a whole, for the debts of certain component elements of it*." 235 Cal. App. 3d 1220, 1249-50 (1991). See also Toho-Towa Co. v. Morgan Creek Prods., Inc., 217 Cal. App. 4th 1096, 1108, 159 Cal. Rptr. 3d 469, 480 (2013) ("The 'single-business-enterprise' theory is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their resources and operations to achieve a common business purpose."). Thus, if Plaintiff adequately pleads a "single enterprise" theory, it may apply the breach of contract claims to TLC and Haralambus as though they were, essentially, partners in a common venture. Under California law, this means that they are jointly and severally liable for the obligations of the enterprise. Cal.Corp.Code § 16306(a).

The Court holds that the FAC adequately pleads "single enterprise" theory. It adequately pleads the basic elements of alter ego theory for the reasons given as to the original Complaint in the previous order (Dkt. No. 34), and because the FAC adds new, specific allegations that Onward was undercaptalized and that Haralambus used money from TLC to pay Onward's debts.[2] (FAC ¶¶ 44-

---

[2] The "unity of interest and ownership" prong of alter ego theory may be proven by, inter alia, commingling of funds, the undercapitalization or complete lack of assets of a corporation, the use of a corporation as a mere shell, instrumentality or conduit for a single venture, the disregard of legal formalities and the failure to maintain arm's length relationships among related entities, the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another, and the formation and use of a corporation to transfer to it the existing liability of another person or entity. Greenspan v. LADT, LLC, 191 Cal. App. 4th 486, 512-13 (2010).

6

45.) Plaintiff has now made explicit the alter ego theory that was previously only implicit. And Plaintiff alleges specifically that the two corporations were merely fraudulent entities constructed in pursuit of a single enterprise. (<u>Id.</u> at ¶¶ 8, 47 ("Though there were several actors they operated together with a singular purpose – to defraud.").) This is enough to state a claim for breach of contract against TLC and Haralambus based on Onward's liability for the contract.

### 2. Lack of Contract/Statute of Frauds

Defendants also assert that Onward cannot be held liable for Beyond Blue's obligations under the Amended License Agreement.

Defendants' first theory is simply that Plaintiff "fails to allege that Onward, in its own capacity, assumed the obligations of Beyond Blue." (TLC's Mot. Dismiss at 4.) This is a peculiar reading of the FAC, which states that "Haralambus, as Director and/or President of Onward . . . caused Beyond Blue to assign its rights and interests under the Amended License Agreement to Onward." (FAC, ¶ 28.) Even if Plaintiff had not adequately alleged that Onward, TLC, and Haralambus were essentially working as a single entity, the FAC adequately alleges that Haralambus, as an officer of Onward, effected the assignment.

Defendants' next argument is that there is no specific allegation that the assignment was in writing, and therefore the statute of frauds precludes the claim. (TLC's Mot. Dismiss at 4:15-5:2.) That may be true, but it is not dispositive of the claim at this point, for several reasons. First, the allegation that there was an "assignment" could easily mean that there was a written assignment; the Court declines to require Plaintiff to

7

amend the FAC solely to add the word "written." Second, and more importantly, the statute of frauds is an affirmative defense that a party may be estopped from using "where necessary to prevent either unconscionable injury or unjust enrichment." Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 27 (1985). Plaintiff has certainly alleged sufficient facts showing that Onward acted as though it had authority to use Plaintiff's mark and was enriched by the use and licensing of the mark. (FAC, ¶¶ 30-43.) While the estoppel argument may ultimately prove unsuccessful, the inquiry is fact-specific and generally cannot be determined at the pleading stage. Byrne v. Laura, 52 Cal. App. 4th 1054, 1068 (1997).

The Court therefore finds that the breach of contract claims are adequately pled. The Court makes no determination at this time as to the validity of the Statute of Frauds defense.

**B.    Conversion and Money Had and Received Claims Against Haralambus**

The Court had previously dismissed claims against Haralambus for conversion and money had and received, because it was not specifically alleged that Haralambus either personally received the money or used TLC as his alter ego. However, Plaintiff has now adequately pled alter ego liability, as noted above, and the FAC also now specifically alleges that TLC collected and diverted royalties "for Haralambus' personal uses." (FAC, ¶ 41.) Together, these allegations are enough to support the conversion and money had and received claims.

**C.    Claims Against TLC for Actions Taken Prior to 2008**

Defendant TLC argues that it cannot be held liable for either fraudulent representations made, or breaches of contract committed,

8

before September 2008, when it was incorporated. (TLC's Mot. Dismiss at 5-6.) However, because Plaintiff adequately alleges that Onward, TLC, and Haralambus were effectively a single enterprise, it does not matter that TLC did not exist at the time of the alleged fraud or breach. Indeed, to hold otherwise would be to say that someone engaged in a fraudulent single enterprise may effectively commit a series of breaches or torts and then leave the liability behind with an older entity, while moving assets to a new entity. This is precisely the sort of corporate shell game the single enterprise theory is intended to deter. The Court holds that claims against TLC may include actions taken on behalf of the alleged single enterprise prior to the incorporation of TLC.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the motions to dismiss.

IT IS SO ORDERED.

Dated: February 3, 2015

DEAN D. PREGERSON
United States District Judge

9