1  STEPHEN L. BURTON (State Bar No. 113748)
   Law Office of Stephen L. Burton
2  16133 Ventura Boulevard, 7th Floor
3  Encino, California 91436
   Telephone: (818) 501-5055
4  Facsimile: (818) 501-5849
5
6  Attorney for Defendant, the Lambus Corporation
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| MOSSIMO HOLDINGS, LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>     v.<br><br>HARRY HARALAMBUS, an individual; ONWARD PACIFIC LIMITED, a Hong Kong corporation; THE LAMBUS CORPORATION, a California corporation; and DOES 1 through 10,<br><br>            Defendants. | Case No. **CV 14-05912 DDP (JEMx)**<br><br>[*Assigned to the Hon. Dean D. Pregerson*]<br><br>**THIRD-PARTY COMPLAINT** |
| THE LAMBUS CORPORATION, a California corporation,<br><br>            Third-Party Plaintiff,<br><br>     v.<br><br>ICONIX BRAND GROUP, INC., a Delaware corporation; VICTOR SIASAT, an individual; and ROES 1 through 20 (inclusive),<br><br>            Third-Party Defendants. | **First-Amended Complaint Filed**: December 1, 2014 |

In response to Plaintiff Mossimo Holding's LLC's ("Mossimo Holdings") First-Amended Complaint, Defendant and Third-Party Plaintiff, The Lambus Corporation ("TLC"), hereby brings this Third-Party Complaint against Third-Party Defendants Iconix Brand Group, Inc. ("Iconix"), Victor Siasat ("Siasat"), and ROES 1 through 20 (collectively, the "Third-Party Defendants"), alleging as follows:

## THE PARTIES

1. TLC is a California corporation with its principal place of business in Los Angeles, California.

2. Iconix is a Delaware corporation with its principal place of business in New York City, New York. Iconix has availed itself of the privileges of doing business in California by virtue of its systematic business relationships therein. Many of the Iconix brands are offered for sale in California, such as the "Candie's" brand sold in Kohl's department stores, the "Rampage" brand sold in Nordstrom, Dillard's and Macy*s, and the "Mossimo" brand sold in Target. Iconix conducts business in the State of California at numerous locations within this district, and throughout the United States.

3. Siasat is an individual residing in the Republic of the Philippines (the "Philippines"). Siasat conducts business in the State of California with numerous companies within this district. He is the principal of companies through which he purchases millions of dollars worth of apparel goods in California annually from the "Guess?" and "Vans" brands in California.

4. TLC is informed and believes that Siasat is the principal of Promark Industries, Inc., a Philippines corporation that has operated a "Mossimo" business in the Philippines since approximately 1998. Siasat holds himself out as the principal of, and the person in control of and responsible for, the "Mossimo" brand in the Philippines. Siasat holds himself out as the person to be held accountable for the activities of the "Mossimo" brand in the Philippines.

5. TLC does not know the true names or capacities of the Third-Party Defendants sued herein under the fictitious names ROES 1 through 20, inclusive.

6. TLC will amend its claims to state the true names and capacities of ROES 1 through 20 when ascertained.

7. TLC is informed and believes that ROES 1 through 20 are co-conspirators in the conspiracy alleged herein.

## SUBJECT-MATTER JURISDICTION

8. This Court has supplemental jurisdiction over this Third-Party Complaint pursuant to 28 U.S.C. § 1367 and the doctrines of ancillary and supplemental jurisdiction. This Third-Party Complaint arises out of the same case or controversy as the underlying First-Amended Complaint filed in this action by Mossimo Holdings.

## GENERAL ALLEGATIONS

9. In 2012, discussions occurred between Iconix and TLC pertaining to conflicting claims concerning the rights for the use of the "Mossimo" trademarks in the Republic of the Philippines. These discussions encompassed settlement, new license agreements, and joint ventures.

10. At the end of 2012, Iconix represented to TLC that, in exchange for an advance payment of $100,000.00, Iconix would grant continued exclusive rights, alternatively exclusive rights, to three trademarks in the Philippines: (1) "Mossimo", (2) "Joe Boxer", and (3) "Material Girl", with the allocation of these licenses to be left to TLC to decide. Iconix represented to TLC that it was the owner of these trademarks and was the party with the authority to negotiate the rights thereto.

11. TLC paid, and Iconix accepted, this $100,000.00 advance payment pursuant to the parties' agreement and based on discussions that could lead to settlements, new license agreements, and/or joint ventures.

12. Iconix sent term sheets for the "Mossimo" and "Joe Boxer" trademarks.

13. Contrary to the parties' agreement, no term sheet was received with respect to the "Material Girl" trademark.

14. In 2013, Iconix sent a draft agreement that in no way represented the parties' earlier agreements. For example, the draft agreement addressed only the "Mossimo" trademark and introduced burdensome financial requirements that had never been discussed or disclosed previously.

15. During September 2013, TLC and Siasat held several meetings in Los Angeles, California at which the subject matter of this lawsuit was discussed and agreed upon as between TLC and Siasat. These meetings followed upon a conference call between TLC and Iconix during the same week, pertaining to the rights to the above-referenced trademarks and to new business.

16. Simultaneously with the negotiations and agreement with TLC, Iconix was negotiating a joint venture with Li & Fung Limited ("Li & Fung"), a Hong Kong corporation, with respect to numerous trademarks in Southeast Asia, including those trademarks that had been the subject matter of the agreements with TLC for the Philippines. This joint venture between Iconix and Li & Fung was purportedly completed in September of 2013. An announcement in this regard was later made by both Iconix and Li & Fung.

17. TLC was not aware of any of the parallel negotiations or discussions between Iconix and Li & Fung, on the one hand, and Siasat and Li & Fung, on the other hand.

18. Iconix never intended to honor its agreement with TLC and therefore knowingly sent a draft agreement to TLC that did not represent the parties' earlier agreements and that Iconix had no intention of executing. Iconix submitted a bogus draft agreement with the intention and hope that TLC would reject it so that Iconix would not have to honor the previous agreements with TLC.

19. Subsequent to the consummation of the joint venture between Iconix and Li & Fung, Iconix and Siasat abandoned their agreements with TLC and proceeded to engage in a conspiracy in which Siasat and Iconix could do all of the contemplated business directly with Li & Fung.

20. The representations of Iconix deceived TLC into making a payment of $100,000.00 based on promises that were never fulfilled.

## FIRST CLAIM

### (Contribution)

### (Against Defendant Siasat and ROES 1–20)

21. TLC realleges paragraphs 1 through 20 above as paragraph 21.

22. In the First-Amended Complaint, Mossimo Holdings alleges that TLC received, and continues to receive, monies that belong to Mossimo Holdings under the alleged Second Sublicense Agreement.

23. TLC is informed and believes and thereon alleges that Siasat has been operating and continues to operate the "Mossimo" brand business in the Philippines, and that Siasat is withholding any monies set forth under the alleged Second Sublicense Agreement and is instead retaining the monies garnered from exploiting the "Mossimo" license in the Philippines. The monies that Mossimo Holdings alleges to be the subject of its conversion claim are in fact being retained by Siasat.

24. To the extent that a trier of fact determines that any of the allegations in the First-Amended Complaint regarding TLC are true and that TLC has liability to Mossimo Holdings in any amount, then TLC is entitled to contribution from Siasat in an amount to be determined at trial.

## SECOND CLAIM

### (Fraud)

### (Against Iconix and ROES 1–20)

25. TLC realleges paragraphs 1 through 24 above as paragraph 25.

26. Iconix held itself out as the effective owner of the "Mossimo" trademark with the authority to negotiate the rights thereto.

27. At all relevant times, Iconix represented that it was aware of and acknowledged the Sublicense Agreement alleged in the First-Amended Complaint, thereby inducing the alleged Second Sublicense Agreement.

28. At the end of 2012, Iconix represented to TLC that, in exchange for an advance payment of $100,000.00, Iconix would grant continued exclusive rights, alternatively exclusive rights, to three trademarks in the Philippines: (1) "Mossimo", (2) "Joe Boxer", and (3) "Material Girl", with the allocation of these licenses to be left to TLC to decide. Iconix again represented to TLC that it was the owner of these trademarks and was the party with the authority to negotiate the rights thereto.

29. In reliance upon the aforementioned representations by Iconix, TLC made and Iconix accepted a payment of $100,000.00 (representing an advance payment for such rights), culminating in the alleged Second Sublicense Agreement.

30. TLC paid, and Iconix accepted, this $100,000.00 advance payment pursuant to the parties' agreement and based on discussions that could lead to settlements, new license agreements, and/or joint ventures

31. To the extent that a trier of fact determines that any of the allegations in the First-Amended Complaint regarding TLC are true and/or that TLC is liable to Mossimo Holdings for any amount, Iconix is in turn liable to TLC because Iconix's fraudulent conduct triggered the events that Mossimo Holdings alleges caused its harm.

///
///
///
///

5
THIRD-PARTY COMPLAINT

## THIRD CLAIM

### (Unjust Enrichment)

### (Against All Third-Party Defendants)

32. TLC realleges paragraphs 1 through 31 above as paragraph 32.

33. At the end of 2012, Iconix represented to TLC that, in exchange for an advance payment of $100,000.00, Iconix would grant continued exclusive rights, alternatively exclusive rights, to three trademarks in the Philippines: (1) "Mossimo", (2) "Joe Boxer", and (3) "Material Girl", with the allocation of these licenses to be left to TLC to decide.

34. TLC paid, and Iconix accepted, this $100,000.00 advance payment pursuant to the parties' agreement and based on discussions that could lead to settlements, new license agreements, and/or joint ventures.

35. Iconix did not perform any of its obligations and instead entered into a joint venture with Li & Fung for the trademarks that were the subject matter of the agreement between Iconix and TLC (and pursuant to which the $100,000.00 payment was made).

36. It would lead to an unjust result and windfall to Iconix if Iconix was permitted to keep the $100,000.00, requiring disgorgement of this unjustified benefit.

## FOURTH CLAIM

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200)

### (Against All Third-Party Defendants)

37. TLC realleges paragraphs 1 through 36 above as paragraph 37.

38. Counter-Defendants' conduct, as set forth above, is a business act or practice that is unlawful within the meaning of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) because it constitutes a tort (as set forth above).

39. TLC is entitled to restitution of Counter-Defendants' ill-gotten gains and disgorgement of profits obtained as a result of its unlawful acts set forth above.

# FIFTH CLAIM

### (Intentional Interference with Contractual Relations)

### (Against All Third-Party Defendants)

40. TLC realleges paragraphs 1 through 39 above as paragraph 40.

41. TLC had a valid oral contract with Iconix.

42. Siasat had knowledge of this contract, acted intentionally to induce a disruption of this contract, and his actions actually resulted in a disruption of this contract.

43. TLC had a valid oral contract with Siasat.

44. Iconix and knowledge of this contact, acted intentionally to induce a disruption of this contract, and its actions actually resulted in a disruption of this contract.

45. These actions of Third-Party Defendants have directly and proximately caused damage to TLC in an amount to be proven at trial.

# SIXTH CLAIM

### (Intentional Interference with Prospective Economic Advantage)

### (Against All Third-Party Defendants)

46. TLC realleges paragraphs 1 through 45 above as paragraph 60.

47. TLC had economic relationships with each of Iconix and TLC, with a probability of future economic benefit to TLC.

48. Third-Party Defendants had knowledge of these relationships, and committed the wrongful acts alleged herein with the intent to disrupt them.

49. These actions of Third-Party Defendants resulted in an actual disruption of these prospective economic relationships, and TLC has been damaged as a direct and proximate result of such actions. The precise amount of damages to TLC will be proven at trial.

## SEVENTH CLAIM

## (Civil Conspiracy)

## (Against All Third-Party Defendants)

50. TLC realleges paragraphs 1 through 49 above as paragraph 50.

51. Third-Party Defendants, and each of them, expressly formed and operated a conspiracy, as set forth above, by (*inter alia*) agreeing to (i) the alleged fraudulent conduct; (ii) intentionally interfere with TLC's contractual relations; (iii) intentionally interfere with TLC's prospective economic advantage.

52. Third-Party Defendants, and each of them, acted in concert and came to a mutual understanding to accomplish their common unlawful plan.

53. Without limitation, Third-Party Defendants committed the acts set forth above in furtherance of the conspiracy.

54. Third-Party Defendants have suffered damage as a direct and proximate result of the conspiracy in an amount to be proven at trial.

[*Remainder of Page Intentionally Left Blank*]

**REQUEST FOR RELIEF**

WHEREFORE, TLC prays for judgment as follows:

1. On the First Claim for Contribution, for a declaration that TLC is entitled to contribution in an amount to be proven at trial;

2. On the Second Claim for Fraud, for a declaration that Third-Party Defendants are liable to TLC for the amount (if any) of liability attributable to TLC under the First-Amended Complaint;

3. On the Third Claim for Unjust Enrichment,

4. On the Fourth Claim for Unfair Competition, for restitution and disgorgement of ill-gotten gains and illegal profits, and an injunction against further unlawful conduct;

5. On the Fifth and Sixth Claims for Intentional Interference with Contractual Relations and Intentional Interference with Prospective Economic Advantage, for damages in an amount to be proven at trial and an injunction against further unlawful conduct;

6. On the Seventh Claim for Civil Conspiracy, for damages in an amount to be proven at trial and an injunction against further unlawful conduct; and

7. On all Claims, interest as allowed by law, attorney's fees and costs, and such further relief that the Court deems fair.

LAW OFFICE OF STEPHEN L. BURTON

DATED: March 16, 2015

/s/ Stephen L. Burton
Stephen L. Burton
Attorney for Defendant, the Lambus Corporation

9
THIRD-PARTY COMPLAINT

# PROOF OF SERVICE

I declare as follows:

    I am a resident of the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 16133 Ventura Boulevard, 7th Floor, Encino, CA 91436. On March 16, 2015, I served the document(s) described as THIRD-PARTY COMPLAINT, as follows:

☒   BY MAIL– I enclosed said document(s) in a sealed envelope, addressed as stated on the attached Service List, and deposited such envelope in the mail at Los Angeles, CA. The envelope was mailed with postage thereon fully prepaid.

☐   BY FACSIMILE– I faxed said document(s) to the office(s) of the addressee(s) stated on the attached Service List, and the transmission was reported as complete and without error.

☐   BY PERSONAL SERVICE– I caused such envelope to be delivered by hand to the addressee(s) stated on the attached Service List.

☐   BY ELECTRONIC MAIL– I caused said document(s) to be sent to the electronic service address(es) of the person(s) stated on the attached Service List.

Executed on March 16, 2015, at Encino, California.

I declare under penalty of perjury that the foregoing is true and correct.

                                                         /s/ Stephen L. Burton
                                                         Stephen L. Burton

1
2
**PROOF OF SERVICE**
**SERVICE LIST**

3
4
5
Harry Haralambus
15001 Oxnard Street
Van Nuys, CA 91411
Defendant, in Pro Per (existing party)

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28